UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8|28|18

CONNIE AVARAS, individually and as parent of N.A.,

        Plaintiffs,

   -against-

CLARKSTOWN CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE CLARKSTOWN
CENTRAL SCHOOL DISTRICT, and NEW YORK
STATE DEPARTMENT OF EDUCATION,

        Defendants.

15 CV 9679 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Connie Avaras, individually and as parent of N.A., brings this action *pro se* against the Clarkstown Central School District (the "District"), the Board of Education for the District (the "Board") (collectively the "District Defendants"), the New York State Department of Education (the "Department"), and the following Department officials: Mary Ellen Elia, the State Commissioner of Education ("Elia"), Christopher Suriano, the Assistant Commissioner of Special Education ("Suriano"), Joanne LaCrosse, Coordinator of Special Education Policy and Professional Development ("LaCross"), Noel Granger, Supervisor of Program Development and Support Services ("Granger"), and Jackie Bumbalo, Coordinator of Upstate Regional Special Education Quality Assurance ("Bumbalo") (collectively, the "Department Officials") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA" or "IDEIA"), 20 U.S.C. § 1400 et seq., Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and 42 U.S.C. § 1983 ("Section 1983").

Principally, Ms. Avaras seeks judicial review of a decision made by a State Review Officer ("SRO") at the Department, who affirmed the decision of an Independent Hearing Officer ("IHO"), regarding the District's offered IEPs for the 2011-12, 2012-13, and 2013-14 school years.

Before the Court is Plaintiff's Motion for Pendency invoking § 1415(j) of the IDEA, or the so-called "stay put" provision ("Plaintiff's Motion").[1] (*See* Plaintiff's Brief in Support of her Motion for Pendency ("Plf. Br.") (ECF No. 66).) For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

The Court assumes the parties' familiarity with the extensive factual background regarding Plaintiff's substantive claims for relief, and now only discusses the following facts necessary to decide this motion.

N.A., Plaintiff's child, is a resident of the District who has been classified as learning disabled. (*See* C.R. 6-34 ("SRO Dec."), at 8.) He was educated within the district for his Kindergarten (2010-11) and first grade (2011-12) years. (*See* SRO Dec. at 7; C.R. 35-76 ("IHO Dec."), at 43.) Three days before the end of first grade, upon Plaintiff's request, the District's committee of special education (the "CSE") held an initial meeting to ascertain whether N.A. would be classified as learning disabled and what, if any, special education services would be appropriate to ensure N.A. received a free appropriate public education ("FAPE"), as required by

---

[1] In addition to Plaintiff's Motion, pending before this Court are two separate motions: (1) the District Defendants' motion for summary judgment on each of Plaintiff's substantive claims; and (2) the Department and the Department Officials' motion to dismiss the Amended Complaint. (*See* ECF Nos. 43, 53.) Due to the voluminous nature of the administrative record in this matter, and the imminent nature of the request regarding pendency, this Court will issue a separate opinion on Defendants' motions in due course.

[2] As the parties have failed to provide the Court with any exhibits in support of their papers on Plaintiff's Motion, the Court will refer to the decisions by the SRO, (*see* C.R. 6-34 ("SRO Dec.")), and IHO, (*see* C.R. 35-76 ("IHO Dec.")), for the factual and procedural background of this case, found in the certified record provided to this Court in connection with the District Defendants' motion for summary judgment. The citations prefixed by "C.R" refer to the page numbers in the certified record.

law.  (*See* SRO Dec. at 8.)  At that meeting, N.A. was classified learning disabled, an individualized

education program ("IEP") was developed, but no services were provided, as it was the end of the

2011-12 school year.  (*See id.*; IHO Dec. at 50.)  Moreover, Plaintiff rejected the IEP and informed

the District that she believed the services detailed therein were not appropriate.  (*Id.*)

On August 20, 2012, Plaintiff advised the District, via letter, that she was rejecting the IEP

and unilaterally placing N.A. at the Hawk Meadow Montessori School ("Hawk Meadow").  (*See*

SRO Dec. at 8.)  A CSE meeting was thereafter held on September 28, 2012.  (*Id.*)  Prior to that

meeting, on September 12, 2012, Plaintiff advised that she agreed with the classification of N.A.

as learning disabled, but did not consent to the services recommended.  (*Id.*)  N.A. attended Hawk

Meadow for the entirety of the 2012-13 school year.  (*Id.*)  Beginning in October of 2012, the

District began providing transportation for N.A. to and from Hawk Meadow.  (*See* IHO Dec. at

53.)

In June of 2013, the CSE reconvened for its annual review to develop and/or revise an IEP

for N.A. for the following school year, 2013-14.  (*Id.* at 9.)  Plaintiff attended the meeting, and an

IEP was developed.  (*Id.*; IHO Dec. at 55.)  This IEP however, was identical to the IEP that was

developed at the initial CSE meeting held a year earlier.  (*See* SRO Dec. at 9; IHO Dec. at 55.)

Plaintiff rejected this IEP as well, and N.A. attended Hawk Meadow for the 2013-14 school year,

and has been a student there ever since.  (*See* SRO Dec. at 9; IHO Dec. at 56.)

On September 27, 2013, Plaintiff filed her due process complaint arguing that the District

failed to provide N.A. a FAPE for the 2011-12, 2012-13, and 2013-14 school years.  (*See* SRO

Dec. at 9.)  Upon application by Plaintiff, on March 1, 2014, the IHO entered an interim order (the

"Interim Order") whereby she held that Hawk Meadow was N.A.'s then-current placement.  (C.R.

1154-56 ("Int. Ord.").)  She specifically held that "the student's pendency placement" was Hawk

Meadow and that "from September 27, 2013, the date of the parents' [due process complaint], until such time as the issues raised in their DPC are resolved by final order," the District was directed to provide "[t]ransportation to and from Hawk Meadow . . . ." (*Id.* at 1157.) Neither party appealed the Interim Order.

On March 25, 2015, the IHO issued her decision regarding the challenges to the IEPs offered for the 2011-12, 2012-13, and 2013-14 school years. (*See* IHO Dec. at 76.) The IHO determined that the District provided a FAPE for the 2011-12 and 2013-14 school years. (*Id.* at 63-69; 72-73.) The IHO decided, however, that the District failed to provide a FAPE for the 2012-13 school year, that Hawk Meadow was an appropriate replacement, and that Plaintiff was entitled to reimbursement for 2012-13 tuition and transportation costs. (*Id.* at 71-72; 73-75.) The parties thereafter appealed the IHO decision to the SRO who affirmed the IHO's determinations.[3] (*See* SRO Dec. at 14-34.)

Plaintiff initiated this federal lawsuit on December 8, 2015. (*See* ECF No. 1.) In her motion, Plaintiff seeks an order enforcing the stay put provision to allow N.A. to remain at Hawk Meadow during the pendency of this litigation. (*See* Plf. Mot. at 11.) Plaintiff also seeks "retroactive, current and prospective tuition" for Hawk Meadow, transportation "and related services", and attorney's fees. (*Id.*) She also requests that this Court grant her compensatory and punitive damages "in the form of [a] monetary award for Districts [sic] clear ongoing violation of [the] IDEA . . . ." (*Id.*)

---

[3] The SRO's decision deviates from the IHO's insofar as it adjusts the amount of tuition reimbursement Plaintiff was entitled to. (*See* SRO Dec. at 29-33.)

**LEGAL STANDARD**

I.      <u>**IDEA**</u>

The IDEA was enacted "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66 (1999)) (internal quotations omitted). The federal government provides money "to assist state and local agencies in educating handicapped children", so long as they provide a FAPE. *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015). Toward that end, educational districts prepare an IEP in collaboration with "parents, educators, and representatives of the school district, [which] sets out the child's present educational performance, establishes annual and short-term objectives for improvement in that performance, and describes the special designed instruction and services that will enable the child to meet those objectives." *Murphy*, 297 F.3d at 197 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)) (internal quotations omitted). The services attendant to the designed instruction "encompass[] 'transportation, and such development, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." *Doe*, 790 F.3d at 448.

A parent who is dissatisfied with the offered IEP may challenge the District's offer of FAPE by filing an administrative due process complaint for review by an IHO. *See* 20 U.S.C. § 1415; *see also Murphy*, 297 F.3d at 197; *see also T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). After the IHO issues its decision on the merits, the aggrieved party can seek review of that determination by an SRO. *Murphy*, 297 F.3d at 197. "Ordinarily, appeal may be taken to either the state or federal courts only after the SRO has rendered a decision." *Id.*

## II.  Stay Put

The stay put provision is contained in § 1415(j) of the IDEA.  *See* 20 U.S.C. § 1415(j).

This provision mandates that:

> During the pendency of any proceedings conducted pursuant to this section,
> unless the State or local educational agency and the parents otherwise agree,
> the child shall remain in the then-current educational placement of the
> child . . . .

20 U.S.C. § 1415(j).  "The purpose of the provision is 'to maintain the educational status quo while the parties' dispute is being resolved.'"  *Doe*, 790 F.3d at 452 (quoting *Cornwall*, 752 F.3d at 152).  Therefore, a school district is required "to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete."  *Id.* (quoting *Cornwall*, 752 F.3d at 152) (internal quotations omitted).

## III.  Preliminary Injunction

Plaintiff's Motion is one for a preliminary injunction.  Traditionally, on a motion for a preliminary injunction, a party must demonstrate irreparable harm, likelihood of success on the merits, and a balancing of the hardships.  "Pendency has the effect of an automatic injunction, which is imposed *without* regard to such factors" as required under the traditional preliminary injunction standard.  *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (emphasis added); *see also Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) ("The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships.").

## IV.  Exhaustion

Though the IDEA requires exhaustion of administrative remedies prior to initiation of a federal lawsuit seeking relief under its provisions, the Second Circuit has explicitly held that,

where the stay-put provision is invoked, a court of law may hear the application without it being raised on the administrative record first. *Murphy*, 297 F.3d at 199 ("The administrative process is 'inadequate' to remedy violations of § 1415(j) because, given the time-sensitive nature of the IDEA's stay put provision, an immediate appeal is necessary to give realistic protection to the claimed right.") (internal quotations omitted).

Such a determination is grounded in sound reasoning. The critical interest is to ensure the status quo for the child's education during the duration of the administrative and judicial proceedings. *Doe*, 790 F.3d at 452. "If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation is complete." *Murphy*, 297 F.3d at 199. Practically speaking, "access to immediate interim relief is essential for the vindication of this particular IDEA right." *Id.* at 200.

## DISCUSSION

### I. <u>Application of the Stay Put Provision</u>

"Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review." *Murphy*, 297 F.3d at 199 (citing *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466 ((6th Cir. 1996)). The provision thus "requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Cornwall*, 752 F.3d at 171 (citing *Mackey v. Bd. of Educ.*, 386 F.3d 158 (2d Cir. 2004)). Pendency operates to ensure that "all handicapped children, *regardless of whether their case is meritorious or not*, . . . remain in their current educational placement." *Doe*, 790 F.3d at 453 (quoting *Mackey*, 386 F.3d at 160) (internal quotations omitted); *E.Z.-L v. N.Y.C. Dep't of Educ.*, 763 F. Supp. 2d 584, 598-99 (S.D.N.Y. 2011).

The plain language of the stay put provision demonstrates that the test for pendency is binary. First, the courts should assess whether there is a last-agreed upon location between the parties. *See* 20 U.S.C. § 1415(j) ("unless the State or local educational agency and the parents otherwise agree"). If there is no agreement, the "child shall remain in the then-current educational placement". *Id.*

Such an agreement exists if the parents have previously agreed to an IEP. The Second Circuit has also acknowledged that "a child's current placement may be changed upon agreement between the parents and the state, and that an SRO decision that 'agrees with the parents that a change of placement is appropriate . . . must be treated as such an agreement." *Mackey*, 386 F.3d at 163 (citing 34 C.F.R. § 300.514(a) and (c)) (internal quotations omitted). Therefore, "once the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district." *Id.* Finally, agreement may exist where a district begins providing certain services to a disabled child, whether or not it is memorialized in an IEP. *See M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) (finding that "1:1 ABA services became a part of [child's] 'current educational placement' once the DOE began providing them").

Though the IDEA does not define a "then-current educational placement", to make the assessment, the Second Circuit encourages the district courts to look to: "(1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe*, 790 F.3d at 452 (quoting *Mackey*, 385 F.3d at 163) (internal quotations omitted).

The courts must analyze pendency without consideration of whether or not the placement

has been determined to be appropriate. *Doe*, 790 F.3d at 453 (quoting *Mackey*, 386 F.3d at 160 for proposition that "[a] claim for tuition reimbursement pursuant to the stay put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP."). To that point, the Second Circuit has explicitly held that "the stay-put provision means that an educational agency is required to maintain the status quo placement *even if the child would otherwise have no substantive right to it*." *Doe*, 790 F.3d at 453 (emphasis added).

### A. The Child's Appropriate Placement

Plaintiff contends that Hawk Meadow is the last-agreed upon placement for N.A., in light of the IHO's Interim Order dictating as much and the SRO's decision that Hawk Meadow was an appropriate placement for the 2012-2013 school year. (*See* Plf. Br. at 4; Plf. Reply at 12.) The District Defendants argue that Plaintiff may not rely on the SRO's decision for stay put purposes and that the last agreed-upon placement "was [N.A's] placement in first grade in September 2011." (*See* The District Defendants' Brief in Opposition to Plaintiff's Motion ("Defs. Br.") (ECF No. 75) at 4.) This Court disagrees.

Plaintiff filed her due process complaint on September 27, 2013 alleging that the District failed to provide a FAPE for N.A. for the following school years: 2011-12, 2012-13, 2013-14. (*See* SRO Dec. at 9.) By the time the due process complaint was filed, N.A. had already been removed from the District and attending Hawk Meadow for over one year. (*Id.* at 8-9.) Before the IHO, Plaintiff made an application to invoke the stay put provision to keep N.A. at Hawk Meadow throughout the duration of the proceedings. (*See* Int. Ord. at 1154.)

*1. Last Agreed-upon Location*

In light of the IHO's Interim Order,[4] the last agreed-upon educational location is Hawk Meadow. Here, the IHO explicitly determined that the District had agreed to placement at Hawk Meadow insofar as the District agreed to, and was already providing, transportation to and from Hawk Meadow for N.A. beginning in 2012-13. (*See* Int. Ord. at 1155.) *See also Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 482 (2d Cir. 2002) (noting that "the decision of a hearing officer agreeing with the position of the parents" is considered an agreement for purposes of pendency); *M.G.*, 982 F. Supp. 2d at 248 (noting district "opened itself up to being forced to maintain provision" outlined in IHO interim order when they began doing so from the outset); *Warton v. New Fairfield Bd. of Educ.*, 125 F. Supp. 2d 22, 26 (D. Conn. 2000) (referring to IHO interim order for then-current placement). Moreover, in rendering this decision, the IHO explicitly invoked the stay put provision of the IDEA. (*Id.* at 1156.) Hawk Meadow is the last agreed-upon educational location. Neither party appealed this decision; thus, it remained unchanged.

To the extent the IHO's Interim Order is inapplicable, it is nevertheless evident that the District agreed to placement at Hawk Meadow, and on that basis it is considered the last agreed-upon location. Where a district begins providing services, such services become a part of the then-current placement. *See M.G.*, 982 F. Supp. 2d at 247 (finding that "1:1 ABA services became a part of [child's] 'current educational placement' once the DOE began providing them"). Here, the District agreed to, and did provide, transportation to and from Hawk Meadow beginning in October of 2012. (*See* Defs. Br. at 10.)

The SRO Decision, which is the final agency determination, provides no "last agreed-upon

---

[4] The District Defendants do not discuss the impact of the IHO's Interim Order at all, despite Plaintiff's reliance on it for her argument that the last agreed-upon location was Hawk Meadow. (*Compare* Plf. Br. at 4-5 *with* Defs. Br. at 5-10.)

placement".  Plaintiff argues that the SRO Decision indicates that the then-current placement is Hawk Meadow, insofar as the SRO upheld the IHO's determination that Hawk Meadow was an appropriate replacement for the 2012-13 school year.  (*See* Plf. Reply at 12.)  The District Defendants argue, relying on *A.W. v. Bd. of Educ. Wallkill Cent. Sch. Dist.*, No. 14-CV-1583 (DNH/RFT), 2015 WL 3397936 (N.D.N.Y. May 26, 2015), that Plaintiff cannot rely on the SRO Decision for pendency placement as it concerned multiple years of education, and the SRO decided differently on each year.  (*Id.*)  Though this Court agrees that a Plaintiff cannot cherry-pick those favorable portions of a multi-year determination by an SRO for the purposes of pendency, *see A.W.*, 2015 WL 3397936, at *5 (noting that it would be "a fundamentally unfair reading of the [SRO's d]ecision to allow a party to cling to a discrete portion of a comprehensive decision to achieve their preferred outcome while discarding the more significant portion of that same decision which concurrently rendered a completely, overarching different result pertaining to the subject school years"), the inquiry does not end there.

Though the Court hereby holds that the last agreed-upon location was Hawk Meadow, for the sake of thoroughness, it will also review the Second Circuit's then-current placement factors, which yield the same result.

### 2. *Then-Current Placement*

Even if there were no agreed-upon location, the "then current-placement" factors would lead this Court to the conclusion that Hawk Meadow is the location for pendency purposes.

The first and third factors of the test are equally inapplicable to this case.  The first factor requires a court to look at "the placement described in the child's most recently implemented IEP", and the third, to look at the "placement at the time of the previously implemented IEP."  *See Mackey*, 386 F.3d at 163; *see also Doe*, 790 F.3d at 452.  The administrative record demonstrates

that there was never an implemented IEP, as Plaintiff rejected the proposed IEPs for 2011-12, 2012-13, and 2013-14, and instead placed her child in Hawk Meadow in September of 2012. (*See* SRO Dec. at 7-9.) Moreover, there is no evidence that since that time the District developed any IEPs for N.A. and whether or not such IEPs were ever put into effect. (*See generally* Defs. Br.)[5]

The only factor applicable to this case is the second one. Such a factor requires this Court to look at the "operative placement actually functioning at the time when the stay put provision of the IDEA was invoked." *Doe*, 790 F.3d at 452. At the time of the filing of Plaintiff's due process complaint, and at the time she explicitly invoked the stay put provision before the IHO, the "operative placement actually functioning at the time" was Hawk Meadow; N.A. had already been enrolled there as a student for over one year and the District had already been providing transportation thereto and therefrom since October of 2012.

The District is thus responsible for ensuring that N.A. remain "stay put" at Hawk Meadow, until a change in N.A.'s then-current placement is properly made under the IDEA.

## II.     **Relief Requested**

District courts in IDEA cases are entitled to considerable discretion, particularly where it concerns relief. A court "shall grant such relief as [it] determines is appropriate", with respect to any action brought under the IDEA. *Doe*, 790 F.3d at 454. A limitation on this discretion is "that the relief be appropriate in light of the purpose of the Act." *Id.* (quoting *Sch. Comm. Of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985)).

---

[5] Defendants merely argue, without support, that "the last agreed upon placement for N.A. was his placement in first grade in September 2011." (*Id.* at 4.) Such a contention is unavailing as, during that time, N.A. was only receiving RTI services and had not even been classified as learning disabled until June of 2012 when the first IEP was developed. (*See* SRO Dec. at 7-8; IHO Dec. at 43-50.) The law does not suggest that courts find then-current placements by referring to pre-classification general education services of the child, but to refer to services outlined in *implemented* IEPs or the operative placement functioning at the time of invocation of stay put.

### A. Retroactive and Prospective Tuition and Transportation Costs

There is no question that, pursuant to the stay put provision, Plaintiff is entitled to prospective relief in the form of tuition payments. *See E.Z.*, 763 F. Supp. 2d at 599 ("If the student's 'current educational placement' is in private school, 'the responsibility for private school tuition stays put as well.'"); *see also Doe*, 790 F.3d at 448 (instruction "encompasses 'transportation, and such development, corrective, and other supportive services . . . .'"); *N.Y.C. Dep't of Educ. v. S.S.*, No. 09-CV-810 (CM), 2010 WL 983719, at *6 (S.D.N.Y. Mar. 17, 2010). The District is hereby ordered to pay N.A.'s tuition at Hawk Meadow, until his then-current placement is properly changed according to the IDEA. The District must also continue to provide transportation for N.A.

Moreover, "a court may award various forms of retroactive . . . equitable relief, including reimbursement of tuition, compensatory education, and other declaratory and injunctive remedies. *Doe*, 790 F.3d at 454 (citing *Burlington*, 471 U.S. at 369). Such a remedy "is limited to what has been paid," *id.* at 456, and with respect to pendency, goes into effect from the date "the stay put provision [was] triggered[— *i.e.* when the Parent initiated] an administrative due process proceeding", *id.* at 445.

The District Defendants' position with respect to this request is belied by the very authority they cite.[6] The District Defendants cite *Mackey*'s proposition that pendency reimbursement is to be decided "independently" from "a claim for tuition reimbursement pursuant to the inadequacy of an IEP," to argue that Plaintiff is not entitled to reimbursement for the years she did not

---

[6] Additionally, to the extent the District Defendants argue that Plaintiff is not entitled to retroactive reimbursement because her due process complaint only challenged 2011-12, 2012-13 and 2013-14, not the following years, they are incorrect. The law states that a parent is entitled to tuition under pendency "regardless of whether their case is meritorious or not", *see Doe*, 790 F.3d at 453. Moreover, an order directing retroactive tuition reimbursement on pendency grounds is not predicated on a finding that the district did not provide a FAPE. *Id.* (noting that a district can still be held liable for a stay-put violation even if it did provide a FAPE).

challenge before the IHO and SRO. (*See* Defs. Br. at 7.) To the contrary, the Second Circuit explicitly grappled with the issue of retroactive tuition reimbursement under the stay put provision by analogizing to *Burlington* (though *Burlington* dealt with tuition reimbursement in light of an inadequate IEP), and noted that, in both, "the parents were due reimbursement that had been denied them by the simple passage of time, not because they were not entitled, under the IDEA, to the relief they sought." *Id.* at 165. The Court then held that, by operation of the stay put provision, the parents were entitled to tuition reimbursement for the 2000-01 school year, which had already passed. *Id.*

Stay put relief is extraordinary. Nevertheless, the focus is on the child's best interests and "maintaining [the educational] status quo [] even if the child would otherwise have no substantive right to it." *Doe*, 790 F.3d at 453. When a parent invokes pendency, if the then-current placement is private school, the district is responsible for providing tuition therefor. *See E.Z.*, 763 F. Supp. 2d at 599; *see also Doe*, 790 F.3d at 448 (noting that stay put ensures "the educational status quo" and requires the district "to continue funding whatever educational placement was last agreed upon" until the proceedings end). If a district fails to do so, despite this obligation, they will be ordered to provide reimbursement on the basis of pendency alone. *See New York City Dep't of Educ. v. S.S.*, No. 09-CV-810(CM), 2010 WL 983719, at *11 (S.D.N.Y. Mar. 17, 2010) (collecting cases and holding that "school districts that have not paid prospectively to maintain a student's pendency placement in a private school will be ordered to reimburse the parents for the cost of maintaining that placement, *even if the parent's FAPE-based tuition claim has already been found to fail on the merits*") (emphasis added). The law seems to indicate that Plaintiff is entitled to reimbursement for tuition at Hawk Meadow from the date she filed her due process complaint. The IHO's Interim Order, however, only directed the District to provide transportation, which it

has done since that date, and does not illuminate why tuition was not also directed, or whether it was requested in the first place. Consequently, this Court remands this issue back to the IHO to ascertain to what extent, if at all, Plaintiff is entitled to tuition reimbursement on the basis of § 1014(j) from September of 2012 through the 2017-18 school year.

### B.      Compensatory and Punitive Damages and Attorneys' Fees

As part of her application, Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs, for the alleged repeated violations of the stay-put provision of the IDEA; however, due to the nature of this motion, as one for equitable relief, and the purpose of the stay-put provision, to provide equitable relief, "[a]n award of damages is not available." *Doe*, 790 F.3d at 454. Consequently, the Court cannot fashion such relief on this motion. To the extent Plaintiff is entitled to any such damages, it will be determined in regard to the merits of the appeals from the SRO Decision. This portion of Plaintiff's Motion is denied.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED in part and DENIED in part. It is granted insofar as this Court finds that Hawk Meadow is the then-current educational placement and the District should ensure that he remains there throughout the pendency of this litigation. The District is directed to provide tuition for Hawk Meadow for the 2018-19 year onward. Plaintiff's Motion is denied insofar as she seeks reimbursement of Hawk Meadow tuition from the date she filed her due process complaint through the 2017-18 year, and this issue of reimbursement, pursuant to the stay put provision, is remanded back to the IHO. Plaintiff's Motion is also denied insofar as it seeks monetary damages in the form of attorney's fees, compensatory damages, or punitive damages.

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 66.

The Clerk of the Court is further respectfully directed to mail a copy of this Opinion and Order to Plaintiff's address as listed on ECF.

Dated:   August 28, 2018                           SO ORDERED:
           White Plains, New York

NELSON S. ROMÁN
United States District Judge