USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONNIE AVARAS, individually and as parent of N.A.,

    Plaintiffs,

-against-

CLARKSTOWN CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE CLARKSTOWN
CENTRAL SCHOOL DISTRICT, and NEW YORK
STATE DEPARTMENT OF EDUCATION,

    Defendants.

No. 15 CV 9679 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Connie Avaras, individually and as parent of N.A., commenced this action *pro se* against the Clarkstown Central School District (the "District"), the Board of Education for the District (the "Board") (collectively the "District Defendants"), the New York State Department of Education (the "Department"), and the following Department officials: Mary Ellen Elia, the State Commissioner of Education ("Elia"), Christopher Suriano, the Assistant Commissioner of Special Education ("Suriano"), Joanne LaCrosse, Coordinator of Special Education Policy and Professional Development ("LaCross"), Noel Granger, Supervisor of Program Development and Support Services ("Granger"), and Jackie Bumbalo, Coordinator of Upstate Regional Special Education Quality Assurance ("Bumbalo") (collectively, the "Department Officials" and with the Department, "Department Defendants")[1] pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA" or "IDEIA"), 20 U.S.C. § 1400 et seq., Title II of the Americans with

---

[1] The Department Officials were not parties to Plaintiff's original complaint, but were added on February 8, 2017, when Plaintiff filed the SAC.

1

Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and 42 U.S.C. § 1983 ("Section 1983").

In June 2017, Defendants filed a Motion for Summary Judgment, (ECF No. 43), which this Court adjudicated on September 28, 2018, (Order, ECF No. 78), and revisited on October 15, 2018 (Amended Order, ECF No. 79). Presently before the Court is Plaintiff's Motion for Reconsideration of the Court's Amended Order dated October 15, 2018 (Plaintiff's Motion ("Pl. Mot."), ECF No. 81.) For the reasons set forth below, the Plaintiff's motion is DENIED.

## BACKGROUND

The facts for this case have been articulated multiple times in this Court's previous decisions and most recently in this Court's Amended Order. The Court assumes the parties' familiarity with them.

## LEGAL STANDARD

Reconsideration of a previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, Nos. 05 Civ. 3430, 05 Civ. 4759 & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006). Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b), and "[t]he standard for granting a motion for reconsideration . . . is strict." *Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6188339, at *1 (S.D.N.Y. Nov. 25, 2013). They are "addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).

Critically, a motion to reconsider "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 0690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)) (in moving for reconsideration, "'a party may not advance new facts, issues, or arguments not previously presented to the Court.'") Such motions are generally denied "'unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

Plaintiff appears to seek reconsideration of the entire Amended Order. (*See* Pl. Mot. at 25) ("Due to all of the documented evidence included and attached herein, Plaintiff respectfully requests Your Honor reconsider your decision in its entirety, inclusive of FAPE 2013/14, ADA, 504 RA, 1983 CLAIMS, Plaintiff's counterclaim for 2014/15 FAPE, remand for retroactive pendency tuition, transportation reimbursement for 2012 and 2013, and attorney fees.")

Plaintiff's Motion is facially unsound. First, it appears that Plaintiff's arguments regurgitate the arguments already made in her prior briefs. Second, Plaintiff's effort to use the motion for reconsideration as a *carte blanche* review of the decision the Court issued is procedurally improper. *See* Local Rule 6.3 ("There shall be served with the notice of motion a memorandum *setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked*.") Nevertheless, in the interest of finality, the Court will briefly address Plaintiff's material points.

3

### 1. Ruling that District Provided N.A. a FAPE for 2013-14 School Year

Plaintiff contests the deference the Court afforded to the SRO and the accuracy of the evidentiary record from the due process hearing before the IHO. Although Plaintiff may disagree with the decision the Court reached, Plaintiff fails to provide authority showing that the Court incorrectly assessed the administrative record and its findings.

As Defendants note, the role of federal courts in reviewing state education decisions, pursuant to IDEA, is well-established and circumscribed. *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) ("The standard of review "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review.") It is precisely the level of review that the Court used in its analysis. (*See* Amended Order, at 23-26) (showing that the Court assessed the underlying evidentiary record to the extent that it colored the IHO and SRO's processes and bases for its decisions, but appropriately deferred to the SRO's determinations regarding the *substantive merits* of the IEPs.)

Further, in its August 28, 2018 decision, the Court remanded the issue of reimbursement for the cost of tuition for the 2012-13 through 2013-17 school years, noting that it believed the IHO only directed the district to provide transportation costs for the 2013-14 school year and "d[id] not illuminate why tuition was not also directed, or whether it was requested in the first place." *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 CV 9679 (NSR), 2018 WL 4103494, at *5 (S.D.N.Y. Aug. 28, 2018).

On remand, the IHO answered this question and found that the parent did not request tuition through stay-put in the due process complaint notice or at any time prior to the IHO's final decision and only invoked pendency regarding transportation, not tuition reimbursement. (*See* IHO Decision at pp. 4-5). On January 23, 2019, the SRO reviewed the IHO Decision and determined

that the IHO's finding was supported by the hearing record and briefs—which it found to be thorough, unbiased, and based on the same arguments Plaintiff now raises. (*See* SRO Decision 18-138, dated January 19, 2019) ("...in requesting pendency, the parent's attorney specifically requested transportation; she explained that, at the time of the September 2012 CSE meeting, the student was privately placed but the CSE agreed to provide transportation").[2]

Plaintiff now cites to much of the same evidence that the IHO and SRO already reviewed. Accordingly, absent newly discovered information showing that the IHO and SRO's decisions regarding a FAPE and tuition reimbursement for 2013-14 were erroneous, the Court need not disturb their finding that the District provided a FAPE for 2013-14. Plaintiff's motion to reconsider this finding is therefore denied.

### 2. Dismissal of Plaintiff's Non-IDEA Claims

Plaintiff next asks the Court to reconsider its dismissal of Plaintiff's ADA claims. (*See* Pl. Mot. at 12-16.) Plaintiff does not, however, raise new legal arguments, nor provide evidence or case law that the Court overlooked in its underlying decision. This Court already explained in its Amended Order that Plaintiff did not adequately allege an ADA claim. (*See* Amended Order, at 34-36.)

Regarding whether N.A. was "disabled" under the ADA, the Court explained that the ADA and IDEA set forth distinct legal standards in their definitions of "disability" such that an individual does not qualify for the ADA's protections simply by virtue of being "disabled" under the IDEA. (Amended Order, at 35.) It further held that nothing in Plaintiff's Complaint showed that N.A. was separately covered by the ADA beyond what comprised his eligibility under IDEA. (*Id.*) ("Plaintiff has offered no allegations separate from those supporting his IDEA claims that

---

[2] Available at https://www.sro.nysed.gov/decision/2018/18-138.

would allow the Court to infer that N.A. is limited in a major life function such that he would qualify as disabled under [the ADA].") As a matter of law, the Court found this insufficient to allege ADA-based claims. (*Id.*) Plaintiff has not pointed to any facts or cases that the Court overlooked in arriving at its decision. Accordingly, the Court's determination that N.A. did not qualify as disabled remains settled.

Regarding whether the District discriminated against N.A. on the basis of disability, the Court also found that Plaintiff failed to allege that N.A. was "excluded from any programs, denied benefits, or otherwise discriminated against *on the basis of his disability*." (*Id.* at 36.) (emphasis in original). It further found that there were no allegations reflecting that the District had malicious intent or that it acted in bad faith when it grouped N.A. with other disabled students, as opposed to with non-disabled students. In other words, the Court held that even if N.A. were deemed "disabled" under the ADA, there were insufficient allegations to show that the District harbored the requisite level of intent to color an ADA discrimination claim.

The Court has reviewed Plaintiff's myriad reasons for why she believes that N.A. was discriminated against on the basis of his disability, but it ultimately finds, as it did before, that: 1) the Complaint simply does not allege that N.A. has the requisite disability to be covered by the ADA; and 2) Plaintiff does not adduce proof from the record demonstrating that District acted with deliberate or reckless indifference to N.A.'s federally protected rights or that the District acted in bad faith or with gross misjudgment towards N.A. on the basis of his disability.

Plaintiff essentially raises new arguments. First, she argues that it was discrimination to place N.A. in a class with disabled children without an evaluation. Second, she argues that it was discrimination to subject the parent of a disabled child to arduous litigation proceedings.

Plaintiff's discrimination argument contradicts itself. Plaintiff cannot simultaneously argue that N.A. was disabled within the meaning of the ADA and then argue that the school was deliberately indifferent by providing N.A. with the types of resources that are afforded to other disabled students. Similarly, there is no legal basis to Plaintiff's second argument, which is that it is discriminatory "to expect a pro se parent to afford and be able to properly and effectively represent their child against a host of highly paid school district attorney's is discrimination [because] [t]he parties are not being treated equally in a court of law which is federally funded...." The District does not decide how parties litigate, *pro se* or otherwise. And neither the District Court nor District set the administrative adjudicative process. That process has been established by Congress. Therefore, responsibility for Plaintiff's litigation strategy cannot be imputed on the District, and the innate disadvantages of being a *pro se* litigant cannot show deliberate indifference or gross misjudgment. But in any event, these arguments are inappropriate on a motion for reconsideration.

Finally, Plaintiff cannot add a new claim—for ADA retaliation—at this point in litigation. This claim was not alleged in the second amended complaint, and in any event, the Court still holds that N.A. did not qualify as disabled under the ADA on the alleged facts. Accordingly, Plaintiff's motion to reconsider dismissing the ADA claims is denied.

### 3. Dismissal of Plaintiff's Section 1983 Claim

Plaintiff also seeks to have the Court reconsider denying a 1983 claim against the District. In this Court's Amended Order, it held the following:

> To the extent that Plaintiff is seeking to assert claims against the District pursuant to Section 1983, such claims also fail. Having availed herself of the administrative review process, Plaintiff is not entitled to pursue a damage claim pursuant to § 1983 without plausibly alleging she was denied the procedural safeguards to which she was entitled under the IDEA. *See Streck v. Board of Educ.*, 280 F. App'x 66, 68 (2d Cir. 2008) ("plaintiffs may not rely on § 1983 to pursue monetary damages for

violations of the IDEA" where "they were afforded a hearing before an impartial hearing officer and review by a state review office").

Plaintiff does not claim that she was denied access to the administrative review process. Nor does she point to authoritative case law that challenges the binding authority of the Second Circuit, precluding Plaintiffs from getting money damages for IDEA violations where they were afforded the administrative review process. In actuality, Plaintiff again takes issue with the way the administrative review process is set up and the outcome of her case. The Court sympathizes with Plaintiff insofar as the innate frustrations of adjudication. But that is not a legal basis for the Court to overturn its prior decision. Accordingly, the Court declines to reconsider this claim.

### 4. Attorney's Fees

Plaintiff argues that she requested reimbursement of attorney fees in her original complaint and carried the request all the way to the district court. (Pl. Mem. at 24.) Plaintiff adds that she prevailed on a significant issue that achieves some of the benefit she sought when she first filed suit, which is the Court's determination that the District did not provide a FAPE in 2012-13. (*Id.*) Plaintiff adds that though she is now *pro se*, she did retain counsel in the initial proceedings.

Defendants correctly note that this issue of Attorney's Fees was addressed in the Court's August 28, 2018 decision, but not in the Amended Order for which she requests reconsideration. Accordingly, the award of attorney's fees is an issue that is not properly before this Court, and Plaintiff has not provided any reason why she was unable to raise the issue for reconsidering this point earlier, in a timely fashion.

Beyond this procedural issue, however, the Court also finds it improper to award Attorney's Fees where Plaintiff has provided no documentary evidence of when an attorney was retained, for how long, for which parts of the litigation, and at which rates. Indeed, Plaintiff's brief supports that, at best, an attorney was briefly retained during the administrative process, but not

8

during the pendency of this litigation. As Plaintiff's request is improperly made and improperly supported, the Court declines to reconsider the issue of attorney's fees at this juncture.

### 5. Tuition Reimbursement for 2012-13 School Year

Plaintiff claims that despite the Court ruling in her favor for the 2012-13 school year, the District has not reimbursed her for that year's school tuition. (Pl. Mot. at 23.) To the extent that the Court ruled in Plaintiff's favor regarding the District not providing FAPE for the 2012-13school year, the Court's holding implied that the District **was being ordered to provide direct funding or reimbursement** of tuition at Hawk Meadow for that school year. To the extent that there was any ambiguity, the Court clarifies this now. Hence, that order stands.

### 6. Whether Court Should Have Adjudicated a FAPE for 2014-15

Plaintiff also claims that she requested prospective tuition for 2014-15 school year in her initial complaint as a safeguard for pendency placement. (Pl. Mem. at 22.) She adds that 2014-15 qualified for pendency prospectively then and retroactively now. (*Id.*) She also points out that that the Court, in a footnote in the Amended Order, stated that 2014-15 would be included in the IHO remand with respect to retroactive pendency but that there was again no IEP in place at the start of the 2014-15 school year, the IHO made mention of it, and the SRO, in its 2015 decision, said it was too early to decide FAPE. (*Id.*)

To the extent that the IHO has not yet assessed FAPE for 2014-15, the Court's Amended Order remanding that year through the 2017-18 school year to the IHO for consideration stands. The Court explained in its prior decision that at the time it rendered its decision, the only claims that were fully exhausted were the following: "(1) whether N.A. received a FAPE during the 2011-2012, 2012-2013, and 2013-2014 school years; and (2) whether his unilateral placement at Hawk Meadow beginning in the 2011-2012 school year was appropriate." (Amended Order, at 16).

9

Plaintiff has not adduced new evidence suggesting that the Court's determination was incorrect. Rather, in reiterating that IHO and SRO have not yet addressed FAPE for 2014-2015, she shows that the Court cannot assess a FAPE for that year as the issue is not administratively exhausted.

Accordingly, the Court's decision to remand 2014-15 through 2017-18 to the IHO, per the pendency law, stands as is. Plaintiff's motion to reconsider it is therefore denied.

### 7. Dismissal of Claims Against State Defendants

Individual State defendants filed a brief opposing Plaintiff's Motion to Reconsider the Court's decision to dismiss all of her claims against them. (ECF No. 87.) Plaintiff does not provide any legal or factual basis on which the Court's dismissal of claims against them were in error. Accordingly, to the extent Plaintiff attempts to seek reconsideration of the Court's previous dismissal of claims against those State Defendants, these motion is denied.

## CONCLUSION

In light of the foregoing, Plaintiff's Motion is DENIED. The Court confirms that the District was ordered to pay tuition reimbursement for the 2012-13 school year, for which it denied N.A. a FAPE, and that the determination of whether Plaintiff is entitled to tuition reimbursement from the year Plaintiff filed her due process complaint through the 2017-18 school years, under the pendency law, are remanded to the IHO for reconsideration. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 81 and to mail a copy of this Order to Plaintiff at her address as listed on ECF. This constitutes the Court's Order.

SO ORDERED,

Dated: May 20, 2019
White Plains, New York

Nelson S. Román
United States District Judge